Filed 8/6/13  P. v. Magdaleno CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

<table>
<tr><td>THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>ROBERT GERARD MAGDALENO,<br><br>Defendant and Appellant.</td><td>E055248<br><br>(Super.Ct.No. RIF10005976)<br><br>OPINION</td></tr>
</table>

APPEAL from the Superior Court of Riverside County.  Jean P. Leonard, Judge. Affirmed.

William W. Lee, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Melissa Mandel, and Charles C. Ragland, Deputy Attorneys General, for Plaintiff and Respondent.

1

# I

# INTRODUCTION[1]

A jury convicted defendant Robert Gerard Magdaleno of count 1, unlawfully

taking a vehicle in violation of Vehicle Code section 10851, subdivision (a), and count 3,

receiving stolen property, in violation of section 496, subdivision (a). The jury found

defendant not guilty of count 2, receiving the stolen vehicle, in violation of section 496d,

an alternative to count 1. Defendant admitted four prison priors and a strike prior.

The trial court sentenced defendant to a total term of 10 years in state prison. The

court imposed a term of six years on count 1, imposed and stayed one year four months

on count 3, and imposed one year on each of the four prison priors, consecutive to the

six-year term. The court also determined defendant had 405 days credit for time served

before sentencing, plus an additional 202 days pursuant to section 4019, for a total of 607

days.

On appeal, defendant argues the trial court abused its discretion in admitting

evidence of other suspected stolen property. Defendant also seeks additional custody

credits under section 4019. We reject defendant's contentions and affirm the judgment.

# II

# STATEMENT OF FACTS

Richard Zackerdonski and Mith Zackerdonski were getting ready for work about

4:00 a.m. on November 5, 2010. They parked their white 1995 Honda Odyssey van in

---

[1] All statutory references are to the Penal Code unless stated otherwise.

the driveway.  Richard started the van, turned on the heater, and moved the van to the end of the driveway, closer to the gate.  He left the van in park with the keys in the ignition and opened the gate before returning to the house to collect items for the car.  The couple went back and forth between the house and the van, placing packed meals and extra jackets in the van.  Mith also put her brown purse in the van.  The purse contained her driver's license, social security card, a Wescom bank card, AAA card, and some cash.  While in the house getting coffee, Mith spotted the van being driven down the street.  She yelled to Richard who ran out to the street as the van was speeding away.  Richard reported the theft to the police.

On November 6, 2010, at 11:30 p.m., Daniel Suarez, a Riverside police officer, responded to a call regarding a suspicious person—a male Hispanic, wearing a dark-colored beanie and possibly driving a white van.  As Suarez entered a parking lot, he spotted a white van driving toward his police car.  The van did not have a front license place and the headlights were off.  Suarez and his partner stopped the van and approached the driver, whom Suarez identified at trial as defendant.  Defendant handed Suarez a gray backpack and said his identification was inside.  Suarez retrieved several school identification cards in the name of Brian Sanchez with pictures that did not match defendant's appearance.  Instead of the vehicle registration, defendant offered a piece of paper bearing the handwritten name, "Zackerdonski."  Because Suarez recalled Zackerdonski had reported a stolen car a couple of days earlier, he began a vehicle theft investigation.  Defendant identified himself as Robert Magdaleno.

Suarez asked defendant to step out of the vehicle for a patdown search.  In a wallet

3

in defendant's left front pocket were two California driver's licenses, a social security card, a AAA card, and a Wescom bank card, all in the name of Mith Zackerdonski. Inside the van, Suarez found a dark blue or black beanie, a mask, a checkbook in the name of Javier Conejo, and two wallets. A check of the vehicle's identification number confirmed the van was stolen. The Zackerdonskis identified the van as their missing vehicle.

The Zackerdonskis testified at trial they did not know defendant and did not give him permission to take the van, the purse, or its contents. They also testified they could not identify the other items taken from the van.

Brian Sanchez was never contacted about his identification cards.

### III

### EVIDENCE OF OTHER STOLEN PROPERTY

During motions in limine, defense counsel objected to introducing photographs of items found in the van that did not belong to the victims, including the mask and beanie, Brian Sanchez's identification, two wallets, the checkbook in the name of Javier Conejo, and a knife. Although the dark beanie was relevant because it was part of the description given of the suspicious person, defense counsel argued the photograph of the mask was too prejudicial. The trial court excluded the photograph of the mask, finding its probative value was outweighed by prejudice. The court, however, allowed a photograph of the beanie and mask together, reasoning, "I think that the fact that the beanie and the mask are there somewhat dilutes the mask issue." The court noted the relevance of the beanie and found its probative value was not outweighed by undue prejudice or undue

4

consumption of time.

Defense counsel also argued Brian Sanchez's identification cards were more prejudicial than probative because law enforcement had been unable to contact Sanchez to confirm they were stolen. Citing Evidence Code section 1101, subdivision (b), the prosecutor argued the evidence was "absolutely probative" of defendant's knowledge and intent because he was found in a stolen car with two wallets and identification cards bearing another person's name. Furthermore, defendant had offered Brian Sanchez's identification to the officer. The trial court allowed one photograph of Brian Sanchez's identification to show that defendant presented false identification. The court expressly found the probative value was not outweighed by any undue prejudice.

Defense counsel also objected to the photographs of the two wallets and Javier Conejo's checkbook as irrelevant and more prejudicial than probative because Conejo was not an alleged victim in the case. The People again responded that the evidence indicated defendant's intent and knowledge regarding the stolen property because he possessed another person's identifying information. The trial court allowed the photograph, finding "the probative value is not outweighed by undue prejudice. I do think it is relevant because it appears that it's property belonging to another person. Also there's no undue consumption of time." The trial court ruled that the photograph of the knife would be excluded.

Defendant argues the trial court abused its discretion by admitting the subject photographs under Evidence Code section 1101, subdivision (b), and in finding the probative value of the items was not substantially outweighed by the risk of undue

prejudice under Evidence Code section 352. Defendant contends he likely would have obtained a more favorable outcome had they been excluded.

Defendant's argument lacks merit. The evidence was admissible under Evidence Code section 1101, subdivision (b), to show defendant's knowledge of the stolen property and his intent in possessing and attempting to use another person's identifying information as his own. Under Evidence Code section 352, the high probative value of the evidence was not substantially outweighed by the likelihood of undue prejudice. In light of the strong evidence of defendant's guilt, it is not reasonably probable defendant would have obtained a more favorable outcome had the evidence been excluded. Thus, any error was harmless.

A trial court's decision to admit or exclude evidence under Evidence Code section 352 is reviewed for an abuse of discretion. (*People v. Branch* (2001) 91 Cal.App.4th 274, 282.) A reviewing court will reverse only if the trial court's ruling was "'arbitrary, whimsical, or capricious as a matter of law.'" (*Ibid.*)

Evidence Code section 1101, subdivision (b), provides that evidence may be admitted to prove "some fact (such as motive, opportunity, intent, preparation, plan, knowledge, identity, . . . ) other than his or her disposition to commit such an act." For evidence to be admissible to prove intent, the least degree of similarity between the uncharged act and the charged offense is necessary; that is, the uncharged misconduct is sufficiently similar to support the inference a defendant likely harbored the same intent in the charged offense. (*People v. Lindberg* (2008) 45 Cal.4th 1, 23*; People v. Ewoldt* (1994) 7 Cal.4th 380, 402.)

6

Here, defendant was charged with the theft of the van, receiving the stolen van, and receiving Mith's purse and its contents. As the trial court found, defendant's possession of other property not his own was sufficiently similar to support the inference he likely had the same intent in possessing the stolen property in the charged offenses. Additionally, because defendant offered Brian Sanchez's identification cards in response to the officer's request for identification, defendant was aware the cards belonged to another person but he attempted to use them as his own. The identification cards were relevant to the prosecution's case and admissible under Evidence Code section 1101, subdivision (b), because they were probative of defendant's intent and knowledge in possessing the stolen property.

The identification cards were also properly admitted under Evidence Code section 352, providing a trial court with the discretion to "exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." The probative value of evidence is balanced against four factors: (1) the inflammatory nature of the uncharged conduct; (2) the possibility of confusion of issues; (3) the remoteness in time of the uncharged offenses; and (4) the amount of time needed to introduce and rebut the evidence. (*People v. Harris* (1998) 60 Cal.App.4th 727, 737-738, 741.)

Not only was the evidence of defendant possessing other stolen property highly probative of his intent and knowledge in the charged offenses, defendant's possession of the items was similar to his possession of the stolen van. Both required the intent to

7

possess property not belonging to defendant.  The items were not "highly inflammatory."  Instead, the photographs of the items were similar to the types of items from the stolen purse.  The items were no more inflammatory in nature than the property defendant was alleged to have unlawfully possessed.  The probative value of the evidence was not substantially outweighed by the risk of undue prejudice.  The items bearing names of third parties were directly relevant to defendant's knowledge and intent regarding the charged theft and stolen property counts and those items carried minimal risk of undue prejudice.  The photograph of the beanie and mask was relevant to the description of defendant when he was stopped by police.  Defendant has not shown an abuse of discretion.

Finally, any error was harmless due to the strong evidence of defendant's guilt.  Defendant contends the alleged error was prejudicial because no direct evidence showed defendant took the van from the Zackerdonskis' driveway or that he knew the van was stolen and there was no connection between theft of the van and the other items.  (*People v. Watson* (1956) 46 Cal.2d 818, 836.)  Defendant protests he was portrayed as a "suspicious character possibly involved in other thefts and stolen property."  There was ample evidence, however, both direct and circumstantial, of defendant's guilt.  The Zackerdonskis' van was stolen when it was left running in their driveway with the purse in the van.  Defendant was driving the van alone the next day and items from the purse, including identification, bank cards, and a social security card were in defendant's pocket.  The Zackerdonskis did not know defendant or give him permission to use the van or the contents of the purse.  After being stopped, defendant offered false

8

identification. It is wholly unlikely defendant would have obtained a more favorable verdict if the trial court had excluded the photographs of the other stolen items retrieved from the stolen van. These and the other circumstances fully support the inference defendant knew the van and its contents were stolen and the jury's conclusion that defendant had stolen the van and the purse.

IV

CONDUCT CREDITS

Defendant was arrested on November 7, 2010. He was sentenced on December 16, 2011, after serving 405 days. He maintains he is entitled to receive conduct credit at the higher rate of two days for every two days actually served—instead of the former rate of four days for every two days served —for the time he spent in custody after October 1, 2011.

Before October 2011, defendants in local custody were eligible to earn good conduct credit at a rate of two days for every four days of actual custody. (Former § 4019, subd. (f).) Pursuant to an amendment to section 4019, which was operative on October 1, 2011, the accrual rate for good conduct credit changed to two days for every two days of actual custody. (§ 4019, subd. (f).) The unambiguous language of the statute makes it clear that the Legislature did not intend it to apply retrospectively: "The changes to this section enacted by the act that added this subdivision shall apply prospectively and shall apply to prisoners who are confined to a county jail, city jail, industrial farm, or road camp for a crime committed on or after October 1, 2011. Any days earned by a prisoner prior to October 1, 2011, shall be calculated at the rate required

9

by the prior law." (§ 4019, subd. (h).)

Defendant argues the meaning of the two sentences of section 4019, subdivision (h), is ambiguous because the first sentence states that the increased accrual rate applies prospectively only and the second sentence provides that credits earned before October 1, 2011, shall be calculated at the prior rate. We disagree because the two sentences can be read together without creating an ambiguity.

As the court explained in *People v. Rajanayagam* (2012) 211 Cal.App.4th 42, 51, "to read the second sentence" of section 4019, subdivision (h) as stating that a defendant earns day-for-day credit after October 1, 2011, no matter when the crime was committed, "renders meaningless the first sentence. This we cannot do." Rather, "[S]ubdivision (h)'s first sentence reflects the Legislature intended the enhanced conduct credit provision to apply only to those defendants who committed their crimes on or after October 1, 2011. Subdivision (h)'s second sentence does not extend the enhanced conduct credit provision to any other group, namely those defendants who committed offenses before October 1, 2011, but are in local custody on or after October 1, 2011. Instead, subdivision (h)'s second sentence attempts to clarify that those defendants who committed an offense before October 1, 2011, are to earn credit under the prior law. However inartful the language of subdivision (h), we read the second sentence as reaffirming that defendants who committed their crimes before October 1, 2011, still have the opportunity to earn conduct credits, just under prior law. [Citation.] To imply the enhanced conduct credit provision applies to defendants who committed their crimes before the effective date but served time in local custody after the effective date reads too

10

much into the statute and ignores the Legislature's clear intent in subdivision (h)'s first sentence. [¶] We recognize the Legislature in drafting subdivision (h)'s second sentence used the word 'earned.' And it is impossible to earn presentence credits for an offense that has not yet been committed. But reading the first and second sentences together, the implication is the enhanced conduct credit provision applies to defendants who committed crimes before October 1, 2011, but who served time in local custody after that date. To isolate the verbiage of the second sentence would defy the Legislature's clear intent in subdivision (h)'s first sentence and contradict well-settled principles of statutory construction. In conclusion, we find the enhanced conduct credit provision applies *only* to those defendants who committed their crimes on or after October 1, 2011." (*People v. Rajanayagam,* at p. 52, fn. omitted.)

Similarly, the court in *People v. Ellis* (2012) 207 Cal.App.4th 1546, 1553, held: "In our view, the Legislature's clear intent was to have the enhanced rate apply *only* to those defendants who committed their crimes on or after October 1, 2011. [Citation.] The second sentence does not extend the enhanced rate to any other group, but merely specifies the rate at which all others are to earn conduct credits. So read, the sentence is not meaningless, especially in light of the fact the October 1, 2011, amendment to [Penal Code] section 4019, although part of the so-called realignment legislation, applies based on the date a defendant's crime is committed, whereas [Penal Code] section 1170, subdivision (h), which sets out the basic sentencing scheme under realignment, applies based on the date a defendant is sentenced."

We agree with *Rajanayagam* and *Ellis* that the second sentence of section 4019,

11

subdivision (h), reiterates that a defendant who committed his crime before October 1, 2011, will accrue good conduct credit at the rate specified under the earlier version of the statute. The second sentence of subdivision (h) does not create an ambiguity when read in conjunction with the first sentence of that subdivision.

Finally, defendant argues a prospective-only application of section 4019, subdivision (f), would violate equal protection. To prevail on an equal protection claim, defendant must show the state has adopted a classification affecting two similarly situated groups in an unequal manner, and no rational basis exists for doing so. (*People v. Hofsheier* (2006) 37 Cal.4th 1185, 1199-1200.) Defendant has made the requisite showing as to the first prong of the equal protection analysis. "Defendants who committed offenses and earned conduct credit before the operative date of the statute are treated more harshly than those who committed the same crimes and earned conduct credit on or after October 1, 2011. The two groups are similarly situated in the sense that they committed the same offenses but are treated differently in terms of earning conduct credit based solely on the dates their crimes were committed. For purposes of receiving conduct credit, nothing distinguishes the status of a prisoner whose crime was committed after October 1, 2011, from one whose crime was committed before that date." (*People v. Verba* (2012) 210 Cal.App.4th 991, 995-996; see also *People v. Rajanayagam, supra*, 211 Cal.App.4th at pp. 53-54.)

However, a rational basis exists for making the increased accrual rate for good conduct credit apply only to those crimes committed after a date certain. The classification created by the October 1, 2011, amendment to section 4019 bears a rational

12

relationship to cost savings, balanced against public safety, by increasing the accrual rate for good conduct credit, and thereby decreasing the time certain defendants will spend in custody, while ensuring that defendants are punished according to the sanction in effect as of the date their crime was committed. (See *People v. Rajanayagam, supra*, 211 Cal.App.4th at p. 55; *People v. Verba, supra*, 210 Cal.App.4th at pp. 996-997.)

Because defendant committed his crime on November 5, 2010, before October 1, 2011, his credits must be calculated pursuant to the law in effect at the time he committed the offense. Accordingly, defendant was entitled to two days of conduct credit for every four actual days in custody under section 4019. Defendant spent 405 days in custody, and thus, was correctly awarded 202 conduct credits. As set forth above, this does not violate either the federal or state guarantee to equal protection.

V

DISPOSITION

There is no error in admitting evidence of other stolen property and defendant is not entitled to additional conduct credits. We affirm the judgment.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON
J.

We concur:

RAMIREZ
P. J.

MILLER
J.

13